## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

TOMMIE LEE KIRKLAND,           )
                               )
              Plaintiff,       )
                               )
         v.                    )     1:15CV00086
                               )
CAROLYN W. COLVIN,             )
Acting Commissioner of Social  )
Security,                      )
                               )
              Defendant.       )

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Tommie Lee Kirkland, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits ("DIB"). (Docket Entry 2.) The Court has before it the certified administrative record (cited herein as "Tr. __"), as well as the parties' cross-motions for judgment (Docket Entries 9, 13). For the reasons that follow, the Court should enter judgment for Defendant.

## I. PROCEDURAL HISTORY

Plaintiff applied for DIB and Supplemental Security Income ("SSI"), alleging a disability onset date of May 31, 2008. (Tr. 243-46.) Upon denial of those applications initially (Tr. 53, 54, 55-68, 69-86, 128-36), Plaintiff sought reconsideration, resulting in approval of his SSI application effective May 21, 2012

(Tr. 88, 89-106, 317), but denial of his DIB application (Tr. 87, 112-15, 107-18, 139-46). Plaintiff requested a hearing de novo on his DIB claim before an Administrative Law Judge ("ALJ") (Tr. 137-38). Prior to the hearing, Plaintiff amended his alleged onset date to June 6, 2010, his 50th birthday. (Tr. 23, 347.) Plaintiff, his attorney, and a vocational expert ("VE") attended the hearing. (Tr. 21-50.) The ALJ subsequently determined that Plaintiff did not qualify as disabled in regards to his claim for DIB. (Tr. 5-16.) The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-4), making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

1. [Plaintiff] last met the insured status requirements of the . . . Act on September 30, 2010.

2. [Plaintiff] did not engage in substantial gainful activity during the period from his amended alleged onset date of June 6, 2010, through his date last insured, September 30, 2010, the relevant period.

3. Through the date last insured, [Plaintiff] had the following severe impairment: osteoarthritis of the left knee with medial meniscus tear.

. . .

4. Through the date last insured, [Plaintiff] did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

. . .

2

5.  . . . [T]hrough the date last insured, [Plaintiff] had the residual functional capacity to perform light work . . . with exceptions.  He should never climb ladders, ropes, or scaffolds.  [Plaintiff] could occasionally climb ramps and stairs, crouch, kneel, and crawl, and frequently balance and stoop.  He could occasionally push and pull foot controls with his left leg.

. . .

6.  Through the date last insured, [Plaintiff] was capable of performing past relevant work as a photograph equipment maintenance technician (DOT 714.281-026). This work did not require the performance of work-related activities precluded by [Plaintiff's] residual functional capacity.

. . .

In the alternative, considering [Plaintiff's] age, education, work experience, and residual functional capacity, there were other jobs that existed in significant numbers in the national economy that [Plaintiff] also could have performed.

. . .

7.  [Plaintiff] was not under a disability, as defined in the . . . Act, at any time from June 6, 2010, the amended alleged onset date, through September 30, 2010, the date last insured.

(Tr. 10-15 (internal parenthetical citations omitted).)

## II.  DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits."  Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006).  However, "the scope of [the Court's] review of [such a] decision . . . is extremely limited."  Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981).  In

this case, Plaintiff has not shown entitlement to relief under the extremely limited review standard.

## A.  Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).  Instead, the Court "must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted).  "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted).  "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Social Security Commissioner]." Mastro, 270 F.3d at

4

176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Social Security Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[1] "To regularize the adjudicative process, the Social Security Administration has . . . detailed regulations incorporating longstanding medical-vocational

---

[1]   The Act "comprises two disability benefits programs. [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. [SSI] . . . provides benefits to indigent disabled persons.  The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

5

evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id. (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' *i.e.*, currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Comm'r of the Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[2] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, the "claimant is disabled." Mastro,

---

[2] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [Commissioner] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

6

270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, *i.e.*, "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can perform past relevant work; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[4]

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

[4] A claimant thus can establish disability via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at

## B.  Assignments of Error

Plaintiff contends that the Court should overturn the ALJ's finding of no disability on these grounds:

(1) "the ALJ conducted a flawed RFC assessment by failing to consider medical evidence after the [date last insured ("DLI")]" (Docket Entry 10 at 7); and

(2) "the ALJ performed an improper credibility analysis" (id. at 11).

Defendant contends otherwise and urges that substantial evidence supports the finding of no disability. (Docket Entry 14 at 5-19.)

### 1.  Post-DLI Evidence

Plaintiff first contends that the ALJ erred in formulating the RFC because she should have evaluated Plaintiff's post-DLI "2011 [and] pre-May 2012 medical records," and should not have discounted the opinions of consultative examiners Anthony J. Smith, Ph.D., and Maqsood Ahmed, M.D., and physician's assistant Ashley Grimsley because such opinions post-dated the DLI. (See Docket Entry 10 at 10 (citing Tr. 13, 14, 490); see also Tr. 444-47, 483-88.) According to Plaintiff, "[m]edical evaluations made after a claimant's insured status has expired are not automatically barred

_____

steps one, two, four, and five.  Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis.  See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

8

from consideration and may be relevant to prove a disability arising before the claimant's DLI" (Docket Entry 10 at 9 (citing Bird v. Commissioner of Soc. Sec. Admin., 699 F.3d 337, 340-41 (4th Cir. 2012)), particularly where the post-DLI evidence is "reflective of a possible earlier and progressive degeneration" (id. at 10 (citing Moore v. Finch, 418 F.2d 1224, 1226 (4th Cir. 1969)). Plaintiff thus argues that the ALJ erred by not considering the further progression of Plaintiff's degenerative disease in both knees between his last pre-DLI medical evaluation in May 2008 and his DLI in September 2010. (Id. at 10-11.) Finally, Plaintiff asserts that, under Social Security Ruling 83-20, Titles II and XVI: Onset of Disability, 1983 WL 31249, at *3 (1983) ("SSR 83-20"), the ALJ should have called on a medical expert to determine the proper onset date of disability. (Id. at 11.) Plaintiff's arguments ultimately lack merit.

The Fourth Circuit has held "that post-DLI medical evidence generally is admissible in [a Social Security] disability determination in such instances in which that evidence permits an inference of linkage with the claimant's pre-DLI condition." Bird, 699 F.3d at 341 (emphasis added) (citing Moore, 418 F.2d at 1226). In Moore, the Fourth Circuit found such linkage in medical evaluations post-dating the claimant's DLI that "reflect[ed] . . . a possible earlier and progressive degeneration." Moore, 418 F.2d at 1226. Bird further held that "retrospective consideration of

9

medical evidence is especially appropriate when corroborated by lay evidence," such as the claimant's testimony. Bird, 699 F.3d at 342 (citing Moore, 418 F.2d at 1226).

As a starting point in the analysis, the ALJ here stated that she had engaged in "careful consideration of the entire record" (Tr. 11 (emphasis added)), and referenced in her decision both the two consultative examinations performed in 2012 and Ms. Grimes' 2013 letter (see Tr. 13-14). Thus, Plaintiff's argument boils down to a complaint that the ALJ did not expressly discuss Plaintiff's medical records from January 2011 to May 2012, rather than an allegation that the ALJ failed to consider any post-DLI evidence altogether.

The post-DLI evidence the ALJ failed to discuss consists of four visits to the Lincoln Community Health Center in 2011 for conservative treatment of Plaintiff's degenerative knee disease (see Tr. 410-25), an orthopedic consultation in April 2012 for knee and hip pain and degeneration (see Tr. 479-81), and records relating to his left total knee arthroplasty on May 4, 2012, and post-surgical follow-up and physical therapy (see Tr. 426-43, 451-69). Because the above-described evidence reflected treatment of Plaintiff's degenerative left knee condition (which clearly existed prior to Plaintiff's DLI, see, e.g., Tr. 377-79), the ALJ should have discussed that evidence and its relevance, if any, to the state of Plaintiff's knee condition from June 30, 2010, to

10

September 30, 2010.  The post-DLI records show that Plaintiff's knee degeneration had progressed from its state in May 2008 (when Plaintiff last sought treatment for his knees pre-DLI) (compare Tr. 377-79, with Tr. 425, 481), which leaves open the possibility that Plaintiff's knee impairment had worsened to some degree even by September 30, 2010.

However, even assuming the ALJ erred by failing to discuss Plaintiff's medical evidence from January 2011 to May 2012, any such error remains harmless under the circumstances of this case. As argued by the Commissioner, notwithstanding the ALJ's failure to discuss the above-described post-DLI evidence, she "did not underestimate the severity of Plaintiff's left knee impairment." (Docket Entry 14 at 10.)  In other words, Plaintiff does not show how an express discussion by the ALJ of the evidence in question would have led to a different RFC and/or a different outcome at steps four and five of the SEP.  (See Docket Entry 10 at 7-11.) The ALJ found that Plaintiff suffered from severe osteoarthritis of the left knee with a medical meniscus tear at step two (see Tr. 10), and clearly accounted for that impairment in the RFC by limiting Plaintiff to light work[5] with no climbing of ladders, ropes, or scaffolds, occasional climbing of ramps and stairs, occasional crouching, kneeling, and crawling, frequent balancing and stooping, and occasional pushing and pulling of foot controls

---

[5] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects up to 10 pounds."  20 C.F.R. § 404.1567(b).

with the left leg (see Tr. 11).[6]  Significantly, in adopting an RFC at the light level of exertion, the ALJ explicitly rejected a state agency physician's opinion (arising from Plaintiff's previous application for DIB and SSI) that, as of September 2, 2008, Plaintiff remained capable of a full range of medium work (see Tr. 13 (citing Tr. 384-91)), thus implicitly acknowledging that Plaintiff's knee condition had worsened since September 2008. Moreover, the ALJ evaluated Plaintiff's testimony concerning the impact of his knee impairment on his ability to function during the relevant period in 2010 and found his testimony "not credible." (Tr. 12; see also Tr. 39-41.)  For the reasons explained in the context of Plaintiff's second issue on review, substantial evidence supports the ALJ's credibility analysis.

In short, although the ALJ erred by failing to discuss some of Plaintiff's post-DLI medical treatment from January 2011 to May 2012, Plaintiff has failed to show how such error prejudiced him. See Morgan v. Barnhart, 142 Fed. App'x 716, 723 & n.6 (4th Cir. 2005) (applying harmless error standard in Social Security appeal); Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle

---

[6] Plaintiff's argument that the ALJ failed to "consider the progression of [his] right knee impairment" misses the mark.  (Docket Entry 10 at 11.)  Although Plaintiff complained of right knee pain on two occasions prior to his DLI (see Tr. 358, 377), his medical providers did not take x-rays or order other diagnostic tests of his right knee and did not diagnose Plaintiff with any right knee impairment prior to his DLI (see id.).  In fact, on May 2, 2008, the physician opined that Plaintiff's "odd" gait due to his left knee pain likely caused his right knee pain (and lower back pain), rather than degeneration. (Tr. 377.)  Thus, any post-DLI treatment for a degenerative right knee condition did not link back to any documented, pre-DLI condition.

of administrative law or common sense requires us to remand a [Social Security] case in quest of a perfect opinion [from an ALJ] unless there is reason to believe that the remand might lead to a different result."); <u>Mays v. Bowen</u>, 837 F.2d 1362, 1364 (5th Cir. 1988) ("Procedural perfection in administrative proceedings is not required. This court will not vacate a judgment unless the substantial rights of a party have been affected.").

Similarly, the Court should find no prejudicial error with respect to the ALJ's evaluation of the two 2012 consultative examinations and the 2013 opinions of Ms. Grimsley. (See Tr. 13-14.) In June 2012, Anthony J. Smith, Ph.D., conducted a consultative psychological evaluation of Plaintiff, diagnosed him with depressive disorder, and opined that Plaintiff had poor memory and concentration, below average intellectual functioning, and likely could not interact with peers or respond appropriately to supervision. (See Tr. 444-47.) Two months later, Dr. Maqsood Ahmed performed a consultative physical examination of Plaintiff, noted tenderness in Plaintiff's hips and a reduced range of motion in Plaintiff's hips and knees, assessed a history of hip and knee surgeries and a history of anxiety, and opined that Plaintiff could walk short distances without a cane, could perform activities of daily living with some difficulty, and would have limitations on lifting and carrying heavy objects and walking for prolonged periods, but would not have any limits on sitting or standing.

(See Tr. 483-88.) In April 2013, Ms. Grimsley stated in a letter that Plaintiff had undergone bilateral total knee arthroplasties, had "severe bone on bone osteoarthritis of his hips," was "awaiting surgery for his hips," and could not participate in community service due to "severe limitations in his movements." (Tr. 490.) The ALJ discounted the two consultative examiners' opinions on the sole basis that such opinions lacked relevance because they post-dated the DLI by over one and a half years, and rejected Ms. Grimsley's 2013 letter opinions because the opinion post-dated the DLI by three years (and because Ms. Grimsley did not constitute an "acceptable medical source" under the regulations). (See Tr. 13-14.)

With regard to Dr. Smith's 2012 opinions concerning Plaintiff's depressive disorder, such opinions do not link to any pre-DLI evidence, as Plaintiff did not, on his Disability Reports (see Tr. 284, 295, 321), before the ALJ (see Tr. 24-43), or in support of his instant Motion (see Docket Entry 10 at 7-14), take the position that he suffered from depression during the relevant period from June to September 2010; nor does the record reflect any treatment for depression during that period. Thus, the ALJ did not err by discounting Dr. Smith's opinions solely because they post-dated the DLI.

In contrast, both Dr. Ahmed's and Ms. Grimsley's opinions concern, at least in part, the status and impact of Plaintiff's

14

degenerative knee condition.  (<u>See</u> Tr. 483-88, 490.)  Thus, that evidence links to pre-DLI evidence and reflects the progression of Plaintiff's knee degeneration, such that <u>Bird</u> would likely preclude the ALJ from summarily dismissing it simply because it post-dated the DLI.  <u>Bird</u>, 699 F.3d at 341.

Nevertheless, the Court should construe any such error by the ALJ as harmless.  Plaintiff has offered <u>no</u> argument regarding how the ALJ's giving more weight to Dr. Ahmed's opinions would have had any impact on the RFC or on the ALJ's ultimate conclusions at steps four and five.  (<u>See</u> Docket Entry 10 at 10.)[7]  Under such circumstances, Plaintiff has not shown error by the ALJ in regards to her evaluation of Dr. Ahmed's opinions that affected the outcome of this case.  <u>See</u> <u>United States v. Zannino</u>, 895 F.2d 1, 17 (1st Cir. 1990) ("[A] litigant has an obligation to spell out its arguments squarely and distinctly, or else forever hold its peace." (internal quotation marks omitted)).

With regard to Ms. Grimsley, two factors preclude a finding that any potential <u>Bird</u> error by the ALJ prejudiced Plaintiff. First, the ALJ also discounted Ms. Grimsley's opinions because, as a physician's assistant, she did not constitute an "acceptable medical source" under 20 C.F.R. § 404.1513(a) (Tr. 14), thus providing a valid basis, apart from any DLI-based reason

---

[7] Dr. Ahmed, although noting Plaintiff's "long history of chronic pain mostly in his knees" (Tr. 488), did not give any indication that his functional limitations for Plaintiff should have retrospective effect (see Tr. 483-88).

potentially prohibited under Bird, for discounting Ms. Grimsley's opinions.[8]   Second, Plaintiff has failed to show how even fully crediting Ms. Grimsley's opinions would have changed the outcome in this case (see Docket Entry 10 at 10), and a careful review of Ms. Grimsley's statements suggests why:  After providing information regarding the status of Plaintiff's knee and hip surgeries, Ms. Grimsley stated: "Currently, due to [Plaintiff's] medical conditions, he is unable to participate in community service due to his severe limitations in his movements."  (Tr. 490 (emphasis added).)  Ms. Grimsley's use of the word "[c]urrently" indicates that, although Plaintiff suffered limitations at that time, they did not stem from an impairment of long-standing or expected permanency, let alone from a progressive, ongoing degeneration dating to a period before his DLI.  (Id.)

Lastly, Plaintiff's argument that the ALJ should have called a medical expert to determine an onset date under SSR 83-20 fails. Because the ALJ found that Plaintiff did not qualify as disabled at any time during the relevant period (see Tr. 15), no need existed for the ALJ to go further for purposes of the DIB claim.  See Key v. Callahan, 109 F.3d 270, 274 (6th Cir. 1997) ("Since there was no

---

[8] Notably, the record neither reflects nor does Plaintiff argue (see Docket Entry 10 at 10) that Ms. Grimsley worked so closely under a physician's supervision that she offered her opinions while acting as the agent of an acceptable medical source.  See generally Taylor v. Commissioner of Soc. Sec. Admin., 659 F.3d 1228, 1234 (9th Cir. 2011) (holding that nurse practitioner could qualify as "acceptable medical source" where she worked under physician's close supervision such that she acted as physician's agent).

16

finding that the claimant is disabled . . ., no inquiry into onset date is required. The only necessary inquiry is whether the claimant was disabled prior to the expiration of his insured status, and we agree that the ALJ correctly determined he was not."); McDonald v. Astrue, Civ. Action No. 10-10896-DPW, 2011 WL 3562933, at *10 (D. Mass. Aug. 15, 2011) (unpublished) ("[T]he ALJ was not under any obligation to apply SSR 83-20 in this case.  A determination concerning the onset of disability does not need to be made unless an individual has been determined at some point to have been disabled during the insured period.  Thus, if, as here, the ALJ finds that the claimant was not disabled during the relevant period, there is no requirement that the ALJ determine the onset date." (internal brackets, citation, and quotation marks omitted) (emphasis added)).

In sum, Plaintiff's first assignment of error does not warrant relief.

## 2.  Credibility Analysis

Plaintiff's second and final assignment of error asserts that the ALJ improperly discounted Plaintiff's credibility.  (See Docket Entry 10 at 11-14.)  In particular, Plaintiff maintains that the ALJ should not have discounted Plaintiff's credibility based on the "gap in [medical] treatment from May 2008 until January 2011" (id. at 12 (citing Tr. 12)), because "'[a] claimant cannot be penalized for failing to seek treatment [he] cannot afford'" (id. (quoting

17

Lovejoy v. Heckler, 790 F.2d 1114, 1117 (4th Cir. 1986)).
Plaintiff also challenges the ALJ's "attack[]" on Plaintiff's
credibility based on "his 'very dramatic presentation at the
hearing.'" (Id. at 14 (citing Tr. 12).) According to Plaintiff,
because at the time of the hearing, he had already qualified as
disabled on his SSI claim (effective May 21, 2012), had undergone
bilateral total knee arthroplasties and a left hip replacement, and
was scheduled for a right hip replacement, any pain behaviors
during the hearing should have "enhance[d] [Plaintiff's]
credibility, [and] not detract[ed] from it." (Id.) Plaintiff's
arguments fail to demonstrate entitlement to relief.

"A claimant may not be penalized for failing to seek treatment
[]he cannot afford; '[i]t flies in the face of the patent purposes
of the Social Security Act to deny benefits to someone because he
is too poor to obtain medical treatment that may help him.'"
Lovejoy, 790 F.2d at 1117 (quoting Gordon v. Schweiker, 725 F.2d
231, 237 (4th Cir. 1984)). Social Security Ruling 96-7p, Titles II
and XVI: Evaluation of Symptoms in Disability Claims: Assessing the
Credibility of an Individual's Statements, 1996 WL 374186 (July 2,
1996) ("SSR 96-7p") provides that:

> [T]he adjudicator must not draw any inferences about an
> individual's symptoms and their functional effects from
> a failure to seek or pursue regular medical treatment
> without first considering any explanations that the
> individual may provide . . . that may explain infrequent
> or irregular medical visits or failure to seek medical
> treatment. . . . For example:

. . .

        *The individual may be unable to afford treatment
        and may not have access to free or low-cost medical
        services.

SSR 96-7p, 1996 WL 374186, at *7-8 (emphasis added).  However, even

if a claimant cannot afford medical treatment, he must "show that

he has exhausted all free or subsidized sources of treatment and

document his financial circumstances before inability to pay will

be considered good cause."  Gordon, 725 F.2d at 237.

        Here, the ALJ's consideration of Plaintiff's failure to seek

treatment between May 2008 and January 2011 complied with SSR 96-7p

and Fourth Circuit precedent.  The ALJ did not summarily discount

Plaintiff's credibility due to the lack of medical treatment

between May 2008 and January 2011; rather, she considered

Plaintiff's statements that he did not have insurance and could not

afford treatment during that time and found those statements not

credible:

        I asked about the notable gap in [Plaintiff's] medical
        treatment from May 2008 until January 31, 2011 (which his
        representative concedes).  He claimed it was because he
        didn't have insurance.  However, this is not credible for
        two reasons.  First, I cannot ignore the timing of his
        Workers Comp[ensation] settlement.  He received $23,000
        on October 23, 2008[,] and then didn't seek medical
        treatment for over two years.  In addition to the
        evidence from that time period showing little wrong in
        the nature of physical impairments, I simply do not
        believe [Plaintiff's] explanation that he couldn't afford
        to go to the doctor when he had just received a
        considerable financial settlement (for a lumbar and left
        knee sprain, after which he was released to go back to
        full work duty with no restrictions).

                                    19

(Tr. 12 (internal citation to the administrative record omitted).)
Although Plaintiff may disagree with the ALJ's conclusions
regarding his credibility, "credibility determinations are
'emphatically the province of the ALJ, not the court.'" Vest v.
Colvin, No. 5:13CV00067, 2014 WL 4656207, at *2 (W.D. Va. Sept. 16,
2014) (unpublished) (citing Dunn v. Colvin, 973 F. Supp. 2d 630,
649 (W.D. Va. 2013)). So long as the record provides substantial
evidence to support the ALJ's credibility analysis and the ALJ
complies with applicable law, as she did here, the reviewing court
should not disturb those findings.

Similarly, the Court should find nothing improper about the
ALJ's consideration of Plaintiff's "very dramatic presentation" at
the hearing as part of the credibility analysis. (Tr. 12.) An ALJ
may consider a claimant's demeanor and pain behaviors as one
component of the credibility evaluation. See Shively v. Heckler,
989-90 (4th Cir. 1984) (holding that ALJ's observation that
claimant "appeared to maximize the pain at the hearings" should "be
given great weight" because ALJ "had the opportunity to observe the
demeanor . . . of the claimant"). Although Plaintiff argues that
such behaviors should have "enhance[d]" his credibility rather than
"detract[ed]" from it (Docket Entry 10 at 14), as the ALJ noted
(see Tr. 35), the amount of pain Plaintiff experienced on the date
of the hearing (October 3, 2013), after two total knee
arthroplasties and a hip replacement, had little relevance to

20

Plaintiff's pain levels and resulting limitations during the relevant period in this case in 2010.

In conclusion, Plaintiff has not shown prejudicial error arising out of the ALJ's evaluation of Plaintiff's credibility.

### III. CONCLUSION

Plaintiff has not established an error warranting remand.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's Motion for Judgment on the Pleadings (Docket Entry 9) be denied, that Defendant's Motion for Judgment on the Pleadings (Docket Entry 13) be granted, and that this action be dismissed with prejudice.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

January 11, 2016

21